JOHN H. BROWN, *et als.*, *v.* E. COOPER, Trustee, etc.

TRUSTEE. *May purchase the interest of his beneficiaries. When.* The trustee of firm assets may purchase the interest of his beneficiaries, who are entitled to priority of satisfaction, being preferred creditors in specified classes, and so long as they do not complain, creditors, or assignees in subsequent classes, cannot object to the validity of the assignment, though the purchase was made at a discount.

Case cited: Morgan *v.* Hannah, 11 Hum., 122.

---

FROM BEDFORD.

---

Appeal from the Chancery Court. JOHN W. PHILLIPS, Chancellor, by interchange.

DAVIDSON & BUCHANAN, E. H. EWING, and JAMES A. WARDER for Brown.

FRIERSON and W. F. COOPER for Cooper.

NICHOLSON, C. J., delivered the opinion of the Court.

There are only two questions necessary to be determined in this case.

1. Whether the claim of Wm. Davidson, as secured in the trust deed, is valid, and to be paid.

The claim is described as a debt of about $4,000, due to Wm. Davidson by the firm of Armstrong & Davidson, who were makers of the deed. The proof shows that about 1853, Davidson, who was a manufacturer of linens, in Ireland, formed a partnership in

Shelbyville, Tenn., with Robert and John Armstrong and James Morgan, under the style of Armstrong & Co., to carry on the wholesale of Irish linen, principally furnished by Davidson, who remained in Ireland, and was never in this country.

In February, 1857, the partnership was dissolved, by a decree of the Chancery Court, when it appeared that Davidson's interest in the stock was $5,689, Robert Armstrong's $1,537, John Armstrong's $33, and Morgan was indebted $239. A new firm was formed by the two Armstrongs, who kept the entire stock, whereby they became indebted to Davidson. The new firm engaged in the business of retail merchants, under the style of Davidson & Armstrong, but Davidson ceased to have any connection with it, and his name, which before was not known in the firm, was now used, so far as the proof shows, without his knowledge or consent. That the new firm was indebted to Davidson in about $4,000, we think the evidence abundantly shows. But it is insisted, that Davidson was a member of the firm, and, therefore, is reponsible for its debts, and cannot have the benefit of the $4,000 secured in the deed of trust made by the firm.

We think the proof fails to show that Davidson was a member of the firm, and, therefore, his claim for $4,000 is valid.

2. The other question is, whether the purchase by the trustee from certain of the beneficiaries of their interests in the trust assets, at a discount, enures to the benefit of other beneficiaries in the trust deed.

It appears that the debts of the firm of Davidson & Armstrong are provided for in those classes numbered 4, 5 and 6, and to be paid for in that order. All the creditors in No. 4 to be paid in full, and then those in No. 5, and the balance to go to No. 6. The claim of Wm. Davidson is No. 4, and all the creditors in that class have been paid except Davidson, and the amount of his claim is reserved by the trustee to await this litigation. In 1867, the creditors of the 5th class filed their bill to have a settlement of trusteeship. At March Term, 1868, the cause was referred for an account of the claims of the creditors. In March, 1869, the report was made, giving the amounts of the several claims, and in June, 1869, a decree was made, authorizing a dividend to be paid on the claims of appellants in the 5th class, reserving an amount to pay Davidson's claim, and reciting, that since the filing of the bill, the trustee had bought up the interests of the other complainants. It appears, that although these purchases were at a discount, they were satisfactory to the beneficiaries who sold their interests, and that the trustee made the purchase with his own means. It appears that C. P. Huston, one of the creditors of the 5th class, and who joined, as complainant, in filing the bill for the pro rata share of his claim in the 5th class, procured an assignment of the claims of some of the creditors in the 6th class, and, by petition, became a party complainant, in the capacity of assignee of the claims in the 6th class, as well as complainant, as creditor, in the 5th class.

It is in his right, as assignee of claims in the 6th class, that he insists that the trustee shall account for the profit made by purchasing the claims in the 5th class, by which addition to the trust fund he seeks to secure payment, *pro tanto,* of the claims in the 6th class, bought by him, and which would not be reached, unless the trust fund is so increased. We think it clear that any creditor of the 6th class would have a right to except to the report of the Clerk and Master as to the allowance to be made to any of the creditors of the preferred class in No. 5, whereby such allowance might be reduced.

Huston, being assignee of claims in the 6th class, could properly become a party, and raise the question whether the trustee, on distributing the funds, should receive the nominal amount of the claims in the 5th class purchased by him, or only the actual amounts paid for the claims.

It cannot be denied that all the creditors of the 5th class are entitled to share pro rata the trust funds intrusted for their benefit. Any of these preferred creditors had the right to sell their shares to a third party, and such assignee would take the full share of his assignor. It is well settled in our own State, that a trustee may purchase from his beneficiary, if he is *sui juris,* when done in good faith, without fraud or imposition. 3 Yerg., 537; 8 Hum., 159; 2 Cold., 511. The rule is well stated in Perry on Trusts, §428, that a trustee may purchase of a *cestui qui trust,* or accept a benefit from him, but the trans-

action must be beyond suspicion, and the burden is on the trustee to vindicate the bargain or gift from any shade of suspicion, and to show that the transaction was perfectly fair and reasonable in every respect. So, if the trustee buy the trust property at private sale or public auction, he takes it subject to the right of the *cestui qui trust* to have the sale set aside, or to claim all the benefits and profits of the sale for himself. In the present case, the beneficiaries are satisfied with their bargain, and make no objection to the receipt by the trustee of the full amount of their claims assigned to him. Nor do the other beneficiaries of the 6th class dispute the validity of the assignment; on the contrary, they claim the benefit of the profits made by the purchaser, and for that reason, do not attack it. It is unquestionably true, that so long as the beneficiaries are satisfied with the bargain, no one else can object, and the trustee is entitled to the full benefit of it, unless it be that other beneficiaries who have an interest in the trust fund can insist that the profits made by the trustee enure to their benefit.

In determining whether there are other beneficiaries having such interest, it is to be observed, that the bill was filed by the creditors of the 5th class, setting out their claims, and insisting on having the assets appropriated according to the trust deed. The trustee answered and admitted the correctness of the claims of complainants, and submitted to an account of his trusteeship. A reference was made to the Clerk and Master to report the claims and the assets in the

hands of the trustee. The report was made, showing the amounts of the several claims, and the amount of the available assets. From this report it appeared that the assets were insufficient to pay the claims in class No. 5, and that the creditors in class No. 6 would receive nothing. From this report, also, the pro rata share of each of the claimants in class No. 5 was ascertained.

It was after the reference ordered that the trustee purchased the interests of several of the creditors entitled in class No. 5 to share in the assets.

The legal effect of these purchases was to vest the trustee with all the interests of the creditors, and to entitle him to receive the full pro rata share going to his assignors. It is clear that the creditors in class No. 6 had no interest in the assets, so long as the assignors of the trustee retained their interests. The question is, did they acquire an interest by reason of the assignment to the trustee? If his purchase was legal and valid, he took the shares of his assignors, and was entitled to the full amount of their shares. We have seen that this assignment was legal and valid as to all others except the assignors themselves, who alone had the right to control the assignment, and claim the full amount of their shares. They were satisfied, and were willing for the trustee to take their shares To hold that the creditors in class No. 6, could object to the trustee receiving the full shares of his assignors, would be to hold that the purchase was not legal and valid as to the assignors. The

creditors in class No. 6, as we have seen, had no interest in the assets, which, by the deed of trust, belonged to the creditors in class No. 5, they had no more interest therein than strangers to the deed. The result is, that upon the principle that the purchase by the trustee was legal, it follows that his title to the shares so purchased was absolute against all persons except his assignors, as they were satisfied, the creditors in the 6th class, who have no interest in the assets, could not object to the validity of the assignment. This is not the case of an encumbrance on the trust funds, as mortgage, etc., but it is a case where classes Nos. 4 and 5 are entitled to the whole trust fund, the individuals in the two classes being entitled to aliquot parts, fixed and certain, of that fund, which they may sell or give away, if fairly done, and when so sold or given away, it is all gone, and there remains nothing to which class No. 6 can lay claim. Nor is it the case of a trustee purchasing claims against a trust estate at a discount, in which the purchase would enure to the benefit of those owning the trust estate; but it is a purchase by the trustee of the trust property or estate itself and being fairly done, the trustee succeeds to the interest of his vendors.

The decree of the Chancellor is affirmed, with costs.