# AMERICAN BANK & TRUST CO. v. LEBANON BANK & TRUST CO.—192 S. W. (2d) 245.

Middle Section. August 25, 1945.

Petition for Certiorari denied by Supreme Court, January 19, 1946.

620

Louis Chambers and Allison B. Humphreys, Jr., both of Lebanon, for appellant.

Albert Williams and Bass, Berry & Sims, all of Nashville, and L. H. Walker, of Lebanon, for appellee.

HICKERSON J. American Bank & Trust Company of Lebanon, Tennessee, brought this suit against Lebanon Bank & Trust Company of Lebanon, Tennessee, to surcharge and falsify a report or accounting which defendant made concerning certain assets which complainant alleged it had transferred to defendant in trust. Several items of the acount were in dispute in the chancery court. Only one item is involved on the appeal, the others having been settled by decree of the chancellor.

The pleadings make this issue on the item before this Court: From cash received by liquidating the assets in question defendant was directed to pay to the party which advanced $166,974.24, the sum of $86,974.24. This claim of $86,974.24 was assigned to defendant. If the assignment is valid, complainant owed defendant a balance of $61,929.37 as of July 29, 1942, and is entitled to apply any further cash realized from these assets to the payment of this balance. If the assignment is invalid, defendant owed complainant the sum of $25,044.87 as of July 29, 1942. Complainant contends the assignment is invalid because it was made to defendant individually for the nominal consideration of $1 while defendant was trustee of the assets out of which this claim should be paid; by the acceptance of this gift defendant made a personal profit from the handling of the trust estate; and that it is precluded from making this personal profit under rules of law and equity governing such transactions.

To the contrary, defendant contends that it had a right to accept the gift under the circumstances of this case, and so the issue was made.

The chancellor decided the issue in defendant's favor, and dismissed complainant's bill at its cost. Complainant appealed.

Four questions are made by the assignments of error which we state affirmatively:

1. Defendant was allowed credit for the claim of $86,974.24 which American National Bank, the original owner, had assigned to defendant, the trustee.

2. Complainant's bill should have been sustained under the relief granted.

3. Defendant should have been required to reduce to cash all assets which it had received from complainant and to account for same.

4. The costs were decreed against complainant.

These questions will be determined in the order stated.

(1) Was defendant entitled to credit for the claim of $86,974.24 which American National Bank, the original owner, assigned to it?

The material facts are these: A financial crisis occurred in this country in 1929. For many months business firms failed. Caldwell & Company, a large investment corporation located at Nashville, Tennessee, was among them. Fourth & First National Bank of Nashville and American National Bank of Nashville were large banking institutions located in Nashville, Tennessee, at that time. The failure of Caldwell & Company weakened Fourth & First National Bank to the extent that it was deemed advisable to effect a merger between that bank and American National Bank. Substantially, the plan of merger was that American National Bank would take over all the assets of Fourth & First National Bank, and assume all its lia-

bilities. This merger became effective November 26, 1930.

Prior to this merger Fourth & First National Bank owned or controlled a majority of the capital stock of American Bank & Trust Company of Lebanon, Tennessee; and American National Bank owned or controlled a majority of the capital stock of Lebanon Bank & Trust Company of Lebanon, Tennessee. The merger of the Nashville banks put the control of both the Lebanon banks in American National Bank.

An audit of the complainant bank, about that time, showed that it was insolvent. In order to save it from failure and liquidation through court proceedings, a plan was devised whereby a merger of complainant and defendant would be made. The contract between the banks under which the merger was effected was:

"Contract

"This agreement made this 2nd day of March 1931 between American Bank & Trust Company of Lebanon, Tennessee, hereinafter for convenience called 'Company', and Lebanon Bank & Trust Company of Lebanon, Tennessee, hereinafter for convenience called 'Bank' both corporations organized under the laws of the State of Tennessee, and doing business in Lebanon, Tennessee,

"Witnesseth:

"1. The Bank agrees to take over certain of the assets of the Company and assume certain of its liabilities as the same are shown on the books of the Company on the 14th day of March 1931, upon the following conditions, to-wit.

" (1) The assets to be conveyed by the Company to the bank·are set out in a paper hereto attached marked Exhibit 'A', and the liabilities to be assumed are set out in a paper hereto attached marked Exhibit 'B.' Proper

changes may be made in said two exhibits for business transacted by the Company between this date and March 14th.

"(2) On the date of conveyance, to-wit: March 14th, 1931, in addition to the assets set out in Exhibit 'A', the Company agrees to pay or cause to be paid, to the Bank the sum of $166,974.24 in cash.

"(3) All assets of the Company not to be conveyed to the Bank are set out in a paper hereto attached marked Exhibit 'C.'

Items on Exhibit 'C' are to be transferred to a Trustee or Trustees, selected by the parties hereto, which Trustee may be the Bank, and said items on said Exhibit 'C' are in any event to be delivered to the Bank, either as Trustee, or Agent, and the Bank agrees to use all reasonable and proper means to collect said items and reduce same to cash. The Bank shall have the right to employ attorneys and other Agents to assist in collecting said items and reducing same to cash, and to pay the reasonable costs and expenses of collections out of the proceeds thereof as a first charge. From the net amount received the Bank is to deduct the sum of 7% for its services in handling said items.

"There is next to be paid out of said proceeds, an amount in cash sufficient to enable the Bank to add the sum of $23,000.00 to its surplus and undivided profits over a period of three years after paying dividends amounting to 8% per annum upon its capital stock of $75,000.00 (which is the amount of capital stock presently to be issued).

"In taking over and valuing the assets to be conveyed the sum of $23,000.00 has been considered as good will of the Company, and the Bank expects to earn this amount in three years after paying the aforesaid divi-

dend, and should its earnings computed on a fair basis be less than sufficient to add said amount of $23,000.00 to its capital and surplus after paying dividends as aforesaid, the Bank shall be entitled to pay itself the difference between the sum actually paid to capital and surplus during said period of three years and $23,000.00. No payment shall be made to the Bank until said period of three years shall have elapsed, but it shall be entitled to withhold and not distribute the amount of $23,000.00 during said period, 3% per annum. No interest is to be paid on other amounts collected but same are to be distributed at reasonable intervals as hereinafter provided. Next after the foregoing, the party or parties advancing the said sum of $166,974.24 are to receive the sum of $86,974.24, and no more, and the balance if any is to be divided pro rata among the stockholders of the company as their interests may appear. Any part or all of the $23,000.00 not necessary to reimburse the Bank as hereinabove provided shall be treated as surplus and be distributed first to the parties advancing money, and next to the stockholders as herein provided, just as other monies.

"(4) It is agreed that the stockholders of the Company are not to be assessed now or hereafter for any liabilities of the company.

"(5) The Company agrees through its proper officers to execute all deeds, bills of sale, conveyances, endorsements or assignments necessary or proper to convey the assets mentioned in 'Exhibit A' to the bank, all of which conveyances shall contain warranties of title usual in Tennessee.

"(6) The Bank agrees that proper corporate action will be immediately taken to increase its capital stock from $25,000.00, as at present, to $75,000.00, and to sell

the amount of said increased capital, to-wit: $50,000.00 at the price of $130.00 per share, and to have said amount paid to it in cash on or before April 14th, 1931.

"(7) This contract is entered into pursuant to authority of the Board of Directors of the Company and of the Bank, and is only to become binding when ratified and approved by the stockholders of each at meetings to be called for the purpose as soon hereafter as practicable, and is further executed upon condition that it shall only become binding when approved by the Superintendent of Banks of the State of Tennesesee.

"In witness whereof, the parties hereto have caused their corporate names to be subscribed by their duly authorized officers, on this the 2nd day of March, 1931.

"American Bank & Trust Company
"By (J. H. Grissim)
President.

"Attest:
"W. D. Ferrell
Cashier
"(Seal)

"Lebanon Bank & Trust Company
"By (A. A. Adams)
President.

"Attest:
"W. B. Hays
Cashier
"(Seal)"

Pursuant to this contract the consolidation of complainant and defendant became effective on March 14, 1931. Assets of complainant set forth in Exhibit A to the contract were transferred outright to defendant. Liabilities of complainant shown in Exhibit B to the contract were assumed by defendant.

Assets of complainant listed in Exhibit C to the contract were transferred to defendant and the terms under which defendant was to handle them are plainly stated in the contract. Hereafter, the assets to which we refer in this opinion will be the assets listed in Exhibit C to the contract unless otherwise indicated. It was made the duty of defendant to reduce the assets to cash and apply the proceeds:

(a) To pay reasonable expenses incident to the liquidation of the assets.

(b) Retain 7% of the amount collected as compensation for its services.

(c) Retain for itself a sum sufficient to pay annual dividends of 8% on a capital stock of $75,000 for three years; and in addition thereto, add $23,000 to the surplus and undivided profits of defendant over the period of three years.

(d) Pay to the party advancing the sum of $166,974.24, which had to be paid in order to effect the consolidation, the sum of $86,974.24, "and no more."

(e) The balance, if any, was to be paid to the stockholders of complainant according to the stock which they owned.

When the plan of merger was being considered it was found that the liabilities of complainant exceeded its assets by the foregoing sum of $166,974.24, unless this amount could be realized from the assets transferred to defendant, which were listed in Exhibit C to the contract. These assets were of doubtful value, and there were prior claims against them under the contract. Because it owned or controlled complainant and defendant on March 2, 1931, American National Bank agreed to pay and did pay this sum of $166,974.24 which was necessary to consummate the deal. Wherefore, American National Bank

became the "party" entitled to receive $86,974.24 from the assets after prior claims had been paid.

The contract between complainant and defendant contemplated that an accounting would be rendered by defendant concerning the assets at the end of three years, for at that time the amount which defendant would be due from the assets under the provisions of the contract could be determined. Defendant did not make this report to complainant at the end of the three year period, but it did evaluate the assets in its hands at that time and ascertained that all the cash that could be realized from a sale of the assets would be needed to pay the claim of defendant which had priority over all other claims under the contract.

American National Bank seemed convinced that there was no equity in the assets to be applied to its claim of $86,974.24. The officers of defendant suggested to American National Bank that its claim be assigned to defendant, so defendant might handle the assets with more freedom. If the assets should prove to have some equity to be applied to this claim, American National Bank would still receive some profit therefrom, since it owned or controlled 421 shares of the 750 shares of capital stock of defendant. So defendant and American National Bank agreed that American National Bank would assign its claim to defendant. This is the assignment:

"Whereas, on the 2nd day of March 1931, a contract was entered into between American Bank & Trust Company and Lebanon Bank & Trust Company, both of Lebanon, Tennessee, providing that Lebanon Bank & Trust Company should take over certain assets and assume certain liabilities of American Bank & Trust Company, and agreed among other things that the assets of American Bank & Trust Company not to be conveyed,

which were set out in a paper writing marked Exhibit 'C', were to be transferred to a Trustee or Trustees and held for a period of three years, and that the proceeds of said assets, if and when collected, should first be used for certain payments to Lebanon Bank & Trust Company, and next to reimburse parties advancing a sum therein mentioned, to the extent of $86,974.24; and

"Whereas, it is agreed between the parties that American National Bank of Nashville made the advancement hereinabove referred to, and is entitled to the reimbursement hereinabove referred to; and

"Whreas, it is further agreed between Lebanon Bank & Trust Company and American National Bank that the assets so conveyed in trust are not sufficient to pay the prior indebtedness due Lebanon Bank & Trust Company, and that it is to the mutual interest of both banks that American National Bank release its claim so that said assets may be definitely handled for the use and benefit of Lebanon Bauk & Trust Company;

"Now, therefore, in consideration of the premises, and One Dollar ($1.00) cash in hand paid, receipt of which is hereby acknowledge, said The American National Bank of Nashville hereby transfers, assigns and sets over to Lebanon Bank & Trust Company all of its right, title and interset in and to the aforesaid assets conveyed by American Bank & Trust Company to Trustees more specifically mentioned and described in said contract of March 2nd, 1931.

"The purpose of this assignment is to recognize there is no equity in said assets and to enable Lebanon Bank & Trust Company to use same as their own by reason of the ownership of the claim of the American National Bank of Nashville, which is prior to the rights of others in said trusteed assets.

"In witness whereof, said American National Bank of Nashville, has caused its corporate name to be hereto subscribed, and its corporate seal to be hereto affixed and attested, by its duly authorized officers on this the 17th day of March 1934.

"The American National Bank of Nashville,

"By (J. W. Wakefield)

"Vice-President.

"Attest:

"(M. E. Barr)

"Cashier."

Complainant had no notice of this assignment until defendant made its first report on July 27, 1939. This credit was listed in the report: "Due Lebanon Bank & Trust Company from American Bank & Trust Company under assignment of American National Bank contract $86,974.24."

A copy of the assignment was furnished complainant on December 14, 1939. There was no consideration for this assignment, except the benefit which American National Bank would receive from the improved financial condition of defendant.

In determining the principles of law which are applicable to the facts of this case, we first look to the decision of the Supreme Court[1] on the first appeal. The chancellor sustained a demurrer to the original bill, as amended, on the ground that there was no equity on the face of the bill. The Supreme Court reversed that decree, and remanded for answer and trial on the merits.

In reaching that conclusion the Supreme Court summarized the contentions of complainant in these words: "Briefly stated, American does not concede that the

---

[1]No opinion for publication.

American National Bank loaned the sum stated to Lebanon, and in the alternative maintains that if the proof should show that such was loaned, Lebanon, as trustee of American, acquired the right, title and interest to the claim for a nominal consideration without the knowledge, consent, or acquiescence of American.''

The Court also stated the contentions of defendant, and then said: ''But as we have heretofore stated, it is no part of our duty on the present appeal to indulge and weigh presumption and counter presumptions, as under the pleadings the sole question to be decided is whether there is any possible equity on the face of the bill even if it be defectively stated.''

For the guidance of the trial court and this Court, the Supreme Court stated ''the applicable and controlling principles of equity'' under the facts alleged in the bill, supplemented by the contentions of the parties, to be: ''That equity exacts undivided allegiance of a trustee and will not suffer him secretly to profit directly or indirectly in dealing with a trust estate, is a principle as old as the leading case of Keech v. Sanford (The Rumford Market case) Sel. Cas. Ch. 61 (1726), 25 Eng. Rep. 223, I White and Tudor Lt. Cas. in Equity 48 (1876), and recently, with a full citation and discussion of the authorities, was applied by this court in Cowan v. Hamilton National Bank, 1941, 177 Tenn. 94-116, 146 S. W. (2d) 359.

''It is also well settled that, with a few exceptions, not material here, a beneficiary, who is sui juris, may sell for a consideration, or give his equitable interest to his trustee if the transaction is characterized by honesty and fairness, and is free from fraud or imposition. Hadley v. Latimer, 1832, 11 Tenn. 537; Marshall v. Stephens, 1847, 27 Tenn. 159, 47 Am. Dec. 601; Leiper v. Ransom, 1865, 42 Tenn. 511; Coffee v. Ruffin, 1867, 44 Tenn. 487;

Talbot v. Provine, 1874, 66 Tenn. 502, and in such a case, the transaction cannot be impeached, by the owner of a subordinate, contingent equity, Brown v. Cooper, 1873, 62 Tenn. 153."

A construction of the contract between complainant and defendant is necessary, for the assets were transferred to defendant under that contract. Defendant contends that a technical trust was not created by the contract. Complainant contends that a trust was created with American National Bank, a simple creditor of complainant and not a beneficiary of the trust.

In Knox County v. Fourth & First National Bank, 181 Tenn. 569, 580, 581, 182 S. W. (2d) 980, 984, the Court said:

"The basis of the trust relation is confidence in the trustee. The testimony of the Knox County judge shows that he trusted absolutely the Bank's judgment as to the value of the collateral securities it would take in substitution. The definition of a technical trust last adopted by this Court is:

" 'An obligation arising out of a confidence reposed in a person to whom the legal title of property is conveyed, that he will faithfully apply the property according to the wishes of the creator of the trust.' Jackson v. Dobbs, 154 Tenn. 602, 610, 290 S. W. 402, 405."

In Restatement of the Law of Trusts, 52, section 14, this rule is stated: "If property is transferred by one person to another who agrees to sell such property and to pay the proceeds or a certain amount therefrom to a third person, a trust of the property is created."

This illustration of the rule is given: "2. In consideration of the transfer of Blackacre by A to B, B agrees to sell Blackacre and out of the proceeds to pay $1,000 to

C and to pay the balance of the proceeds to A. B is trustee of Blackacre for C and A."

■ Bogert on Trusts and Trustees, Volume 1, page 1, sec. 1, defines a trust in these words: "A trust may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another."

■ The facts of the instant case bring it squarely within the foregoing rules. Complainant transferred assets to defendant with the agreement that defendant would reduce the assets to cash and pay the proceeds to the parties named in the contract. Defendant accepted the assets and proceeded to reduce them to cash. A trust was created under these facts.

■ We do not attach any particular importance to the fact that the creation of this trust was based upon strong considerations. The trust having been perfected, and the relation of trustee and beneficiaries having been established the trust will be enforced, in the absence of fraud, regardless of whether it was voluntary or based upon a consideration. McCampbell v. Farnsworth, 43 Tenn. 317; Thompson v. Branch, 19 Tenn. 390, 33 Am. Dec. 153; Read v. Long, 12 Tenn. 68; Pearson v. McCallum, 26 Tenn. App. 413, 173 S. W. (2d) 150; Bogert on Trusts and Trustees, Volume 1, page 568, sec. 202.

Was American National Bank a beneficiary of the trust?

■ "A person is a beneficiary of a trust if the settlor manifests an intention to give him a beneficial interest." Restatement of the Law of Trusts, 320, section 127.

■ "There may be a single beneficiary, or several beneficiaries of a trust." Restatement of the Law of Trusts, 292, section 113.

634

■ The creator may be one of the beneficiaries of the trust. Restatement of the Law of Trusts, 293, section 114; Bogert on Trusts and Trustees, Volume 1, page 495, section169.

■ "The sole trustee of a trust can be one of several beneficiaries of the trust." Restatement of the Law of Trusts, 294, section 115(3); 65 C. J., 572, Trusts, section 337; Bogert on Trusts and Trustees, Volume 1 page 495, section 169.

Applying the foregoing rules, who are the parties to the trust created by the contract of March 2, 1931? This is our answer to the question:

(1) The trust was created out of assets belonging to complainant under the contract which was suported by strong considerations.

(2) Defendant is the trustee.

(3) The beneficiaries are divided into three classes: (a) defendant, individually is the first beneficiary; (b) American National Bank is the second beneficiary; and (c) the stockholders of complainant are the third beneficiaries.

Complainant transferred the assets to defendant in trust with specific directions to defendant to reduce the assets to cash and to distribute the proceeds in the order above stated. Wherefore, the payment of the claim to defendant came first; the claim of American National Bank is subordinated to the claim of defendant; and the claim of the stockholders of complainant is subordinated to the claim of American National Bank.

■ There is no rule of law or equity which prevents a beneficiary of a trust, who is under no incapacity, from disposing of his interest in the trust estate, as a gift or for a consideration. Godsey v. Lenderson, 9 Tenn. App. 580; 65 C. J. 546, Trusts, section 303; Restatement of

the Law of Trusts, 338, section 132; Bogert on Trusts and Trustees, Volume 1, page 525, section 188.

■ "A person has capacity to receive a transfer of the beneficial interest under a trust to the extent that he has capacity to be beneficiary of the trust." Restatement of the Law of Trusts, 339, section 133(2).

■ A trustee who purchases encumbrances on the trust estate or adverse claims against the trust estate must hold them for the benefit of the trust. Quotation from opinion of Supreme Court in this cause, supra; Meloy v. Nashville Trust Company, 177 Tenn. 340, 149 S. W. (2d) 73; Cowan v. Hamilton National Bank, 177 Tenn. 94, 146 S. W. (2d) 359; Cannon v. Apperson, 82 Tenn. 553; Treadwell v. McKeon, 66 Tenn. 445; Tisdale v. Tisdale, 34 Tenn. 596, 64 Am. Dec. 775; Field v. Arrowsmith, 22 Tenn. 442, 39 Am. Dec. 185; Perkins v. McGavock, 3 Tenn. 415; 65 C. J., 652-657, Trusts, sections 520, 521; 26 R. C. L. 1325, 1326 Trusts sections 188, 189.

■ A beneficiary may sell his interest in the trust to the trustee, and the subordinate beneficiaries cannot complain. Quotation from opinion of Supreme Court in this case, supra; 65 C. J. 774, Trusts, section 645; 26 R. C. L. 1375, Trusts, section 236; Bogert on Trusts and Trustees, Volume 1, page 526, section 188; Restatement of the Law of Trusts 338, section 132. This rule is stated in the authority last cited: "c. To Whom Transfers May Be Made. The beneficiary has power to transfer his interest to a third person, to a co-beneficiary, or to the trustee." ·

Also in Restatement of the Law of Trusts 1061, section 343, it is said: "If there are several beneficiaries of a trust and one of them releases his interest, the release may be given for the benefit of the trustee, or it may be given for the benefit of other beneficiaries, or it may have the effect of causing a resulting trust to the set-

tlor. Which effect it has depends upon the manifestation of intention of the beneficiary in making the release.''

The facts of this case leave no possible doubt about the intention of American National Bank in making the assignment of its interest in the trust to the trustee. The assignment shows on its face the intention of the assignor. Certainly, it could not be said that American National Bank meant for complainant or the stockholders of complainant to receive the benefit of its claim. The assignment was made so defendant individually could have the full benefit of the claim, for whatever it was worth, and thereby be enabled to better its own financial condition.

 An encumbrance on a trust, or a claim against the trust, is not synonymous with the interest of a beneficiary. The interest of a beneficiary is that part of the trust estate which goes to such beneficiary after encumbrances on the trust estate, or valid claims against the trust estate, have been paid. The interest of a beneficiary is not an encumbrance on the trust estate, nor a claim which is adverse to the trust.

The assignment of the claim of American National Bank to defendant was not the purchase by defendant of an encumbrance on the trust; it was not dealing by the trustee in the trust res; nor was it an interest which was adverse to the trust.

 A trustee is under no duty, as insisted by complainant, to bargain with one beneficiary and purchase his interest at the lowest dollar for the advantage of another beneficiary. Such conduct on the part of a trustee would in itself constitute a breach of the trust. All beneficiaries of a trust are entitled to receive their full share or interest in the trust estate, and the assignee of that interest, whether the trustee or some other party, takes the inter-

est in the trust estate which the assignor had in the absence of fraud.

■ We concur in the finding of the chancellor that no fraud was alleged nor proved relating to the assignment of this claim. American National Bank had the right to assign the claim. Any party who had the legal capacity to be a beneficiary of the trust had the right to receive the transfer of the beneficial interest of the American National Bank in the trust. Defendant, though acting as trustee of the trust estate, had that capacity. Wherefore defendant took the interest which American National Bank had. It took the place of its assignor, and American Bank & Trust Company cannot complain. The claim of its stockholders was subordinate to the claim of American National Bank, assigned to defendant; and complainant had no interest in the trust estate until prior claims of all beneficiaries were paid in full. Complainant does not contend that the assignment to defendant was invalid. To the contrary it says the transfer was valid, and seeks to recover the benefit of that transfer on the theory that American National Bank lost its interest in the claim by the assignment to defendant; and the interest which defendant acquired thereby inured to the benefit of complainant, because it was trustee of the assets.

All the equities favor defendant. American National Bank gave complainant $80,000 as an outright gift to keep complainant from being liquidated through insolvency proceedings. The security for the other $86,974.24, which American National Bank advanced to effect the consolidation of complainant and defendant, was very meagre and doubtful at the time it was given. With the return of better times, it seems almost a certainty that the balance of $86,974.24 will never be paid in full. With these facts being undisputed we could not hold that complainant or

the stockholders of complainant should benefit to the full extent of $166,974.24 which was advanced by American National Bank, and for which no consideration was paid. The chancellor properly allowed the claim as a credit in the report of defendant as trustee.

Brown v. Cooper, supra, supports the conclusion we have reached. In that case the trustee purchased the interests of certain beneficiaries of the trust at a discount. Other subordinate beneficiaries sought to recover the profit thus made by the trustee on the ground that such profit inured to their benefit. The court rejected that contention and held: (1) the beneficiaries had a right to transfer their claims to the trustee; (2) "the legal effect of these purchases was to vest the trustee with all the interests of the creditors (beneficiaries of the trust), and to entitle him to receive the full pro rata share going to his assignors"; and (3) subordinate beneficiaries could not object.

In conclusion the Court said: "This is not the case of an encumbrance on the trust funds, as mortgage, etc., but it is a case where classes Nos. 4 and 5 are entitled to the whole trust fund, the individuals in the two classes being entitled to aliquot parts, fixed and certain, of that fund, which they may sell or give away, if fairly done, and when so sold or given away, it is all gone, and there remains nothing to which class No. 6 can lay claim. Nor is it the case of a trustee purchasing claims against a trust estate at a discount, in which the purchase would inure to the benefit of those owning the trust estate; but it is a purchase by the trustee of the trust property or estate itself and being fairly done, the trustee succeeds to the interest of his vendors."

Complainant contends that the foregoing statement supports its contention that defendant is not entitled to

credit for the $86,974.24 assigned to it by American National Bank. We do not think so. The facts in the instant case do not bring it within these exceptions to the general rule.

As stated, American National Bank did not transfer to defendant an encumbrance on the trust estate, nor a claim against it. American National Bank transferred to defendant its interest in the trust as one of the beneficiaries thereof. Under similar facts, the Court said in Brown v. Cooper, Trustee, that "the trustee succeeds to the interest of his vendors." The interest of a beneficiary and the interest of the trust are the same. If the interest of the trust is promoted, the beneficiary is benefited thereby to the extent of his interest in the trust. A transfer of a beneficial interest to the trustee has the effect of transferring to the trustee that part of the trust which the beneficiary had. Neither complainant nor other beneficiaries had any interest in the transaction under the facts of this case. American National Bank, the assignor, does not complain. Complainant cannot do so far want of interest.

(2) Should complainant's bill have been sustained?

The chancellor decided two items of the report of defendant according to complainant's contention. With this change in the report, complainant still owed defendant a balance of $61,929.37, so the bill was ordered dismissed. The account was fully and completely stated in the opinion of the chancellor which is in the record. The items in dispute were clearly and specifically settled by the decree. We find no merit in the contention that the decree should have stated that the bill was sustained when it did state that the bill was dismissed. The substance of the ordering or mandatory part of the decree would have been the same whether it provided that the

bill be dismissed or sustained. The relief sought was a decree settling the rights of the parties in regard to the items of the report in dispute, and for a decree for any amount which defendant owed complainant after the true account was stated. The decree did settle the rights of the parties on these disputed items, and dismissed the bill since there was no balance due. Certainly reversible error cannot be predicated upon the form of the decree which plainly adjudged the rights of the parties under the pleadings and proof.

(3) Should defendant have been required to reduce to cash all assets which it had received in trust and to account for same?

Assignment 9 which raises this question states that the chancellor "should have further found, held and decreed that the defendant was trustee of other such assets in its custody and required defendant to complete the carrying out of the trust, until all such assets had been collected or accounted for by it to complainant."

In the brief, supporting the assignment, it is stated: "Also, that this cause should be remanded to the chancery court and the defendant Bank be ordered and directed to fulfill and complete its duties as trustee of said trusteed assets, and to render additional and final accountings of its trusteeship of said assets, and that the same be filed in the chancery court in this cause, upon the remand."

The prayer of the original bill is that complainant "have a decree against the defendant for all amounts collected on said notes listed in 'Exhibit C' to said contract, since June 30, 1939, to date, and that likewise may hereafter be collected by defendant, until the final decree in this cause."

The prayer of the amended and supplemental bill is that complainant "be decreed all subsequent collections that defendant may collect on its assets turned over by it to defendant as its trustee or agent."

We do not think it was reversible error to finally adjudicate all questions before the court and dismiss the bill, leaving future questions which might arise to be determined in another suit. It seems unlikely that there will be any further controversy. If future collections of the assets held in trust by defendant should exceed the balance due defendant of $61,929.37; and disputed questions should arise, such questions could be determined as well in a new suit for that purpose as they could by petition in the present suit which would be in the nature of an original bill. The chancellor decreed the right of complainant to have defendant account for the future collections, but left that accounting to be determined in another suit. The decree provides: "Complainant will be further entitled to credit for all collections from said assets made by defendant, since the last report thereof now on file in this cause."

(4) Did the chancellor properly adjudge the costs against complainant?

Code, Section 10603 provides for the adjudication of costs in the chancery court upon final decree: "Upon the final decree, the costs shall be paid by the party against whom the court shall adjudge them, according to its discretion."

The taxation of costs by the chancellor will not be disturbed on appeal where no abuse of his discretion is shown. Savage v. Neal, 151 Tenn. 70, 268 S. W. 375.

Although complainant did sustain its contentions in regard to two items of defendant's report as trustee,

we think the chancellor properly adjudged the costs because it appears that complainant received an outright gift of $80,000 in the merger to the two banks; and in addition thereto, complainant still owes defendant $61,-929.37 on the claim which American National Bank assigned to defendant, and the prospects of having any substantial part of this balance paid is very doubtful.

All assignments are overruled and the decree of the chancery court is affirmed. Tax the costs of the appeal against complainant and the sureties on its appeal bond.

Felts and Howell, JJ., concur.