**W. Henry OGLE and wife, Bonnie H. Ogle, Complainants-Appellants,**

**v.**

**Ernest M. TROTTER, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Jan. 16, 1973.

Certiorari Denied by Supreme Court May 7, 1973.

Hailey, Waters, Jarvis & Sykes, Sevierville, and Edward F. Hurd, Newport, for complainants-appellants, W. Henry Ogle and wife, Bonnie H. Ogle.

Goddard & Gamble, Maryville, for defendant-appellant, Ernest M. Trotter.

## OPINION

PURYEAR, Judge.

This case, in which all of the parties appealed, involves an unfortunate dispute between two adjoining landowners over the

use of an easement for a driveway which is located upon the property of one of said landowners.

We will refer to the parties herein as complainants and defendant in addition to referring to them by their respective names.

The location of the respective properties and easement are shown on a map which is filed in the record, a copy of which map is attached to this opinion as "Appendix A" thereto.

On the 19th day of October, 1955, Trotter purchased a certain lot or parcel of land fronting on Prince Street in the town of Sevierville and the deed by which said property was conveyed by A. J. King and wife to Trotter contains the following reservation:

"The grantors reserve a right of way or easement 10 feet wide for ingress and egress from Prince Street along the eastern edge of said Lot (Ingle boundary line), 143 feet, more or less, to other lands of A. J. King."

On the 2nd day of January, 1957, Mr. Ogle purchased from Sevier County Bank a lot also fronting on Prince Street in the town of Sevierville, which lot is situated immediately east of the property conveyed by King and wife to Trotter, to which we will hereinafter refer as the Ogle residence property.

On July 15, 1961, Mr. Ogle and his wife, Bonnie H. Ogle, purchased from Paul Clevenger and wife, successors in title to A. J. King and wife, a certain lot or parcel of land known as Lot No. 3 in the M. P. Thomas Addition in Sevierville, Tennessee, which lot lies immediately north of the Trotter lot and the Ogle residence property.

In the deed by which this property was conveyed to Ogle and wife, the easement theretofore retained by King and wife in their deed to Trotter, was described and conveyed to Ogle and wife in the following language of the deed:

"There is also hereby conveyed an easement for ingress and egress to and from Prince Street to the lot above described, which easement is 10 feet in width, extending five feet on each side of the center line, which center line is described as follows: Beginning at a point five feet north 87 deg. 15 min. west from a nail at the north edge of the sidewalk along Prince Street and a corner to the lot of W. Henry Ogle; thence north 2 deg. 45 min east 143.22 feet to a point in the south line of the Lot above described, said easement or right of way extending 10 feet west from the property line of said W. Henry Ogle and running from Prince Street to the south line of the lot above conveyed along the east side of the lot conveyed to Ernest M. Trotter by deed of record in Book 120 at page 40 in the Sevier County, Register's Office."

This Lot No. 3 of the M. P. Thomas Addition to the town of Sevierville fronts on Cedar Street, which is located one block north of Prince Street and runs parallel to Prince Street and we will hereinafter refer to this lot as the Ogle rental property.

At the time the Ogles purchased this rental property two houses were located thereon, one of which was known as the Flannagan house, located on the southern portion of said rental property, and the other of which was known as the Caton house, located on the northern portion thereof.

Prior to the time Lot No. 3 was purchased by the Ogles, the occupants of the Flannagan and Caton houses used the easement across the Trotter lot as a means of access to and from Prince Street and some other persons, not having any connection with either of these houses, sometimes used this easement for the purpose of going all the way through from Prince Street to Cedar Street.

After purchasing this lot, the Ogles moved the Flannagan house and relocated

it upon said lot. After moving and relocating the Flannagan house, the Ogles built a fence across the southern portion of their rental property approximately 71 feet north of the northern boundary line of their residence property, thereby enclosing and incorporating the southern 71 feet of their rental property into the backyard of their residence property. At this time, the Ogles also owned another lot fronting on Cedar Street and situated immediately east of Lot No. 3 in the M. P. Thomas Addition.

As a result of relocation of the Flannagan house and building of a fence across that portion of the lot upon which it had been located, the flow of traffic to and from Prince Street over the easement was terminated and the occupants of the Flannagan and Caton houses were thereafter required to leave and enter said property to and from Cedar Street.

At some time during the year 1967 the Ogles remodeled their residence property and in the course of remodeling thereof they constructed a concrete patio and driveway right up to the eastern edge of the easement and proceeded to pave the easement with asphalt for the purpose of using it as a direct means of access from Prince Street into the rear or northern portion of their residence property.

At that time, a dispute erupted between Trotter and the Ogles, during which dispute Trotter objected to the Ogles paving the easement or using it as a direct means of access from Prince Street into the rear portion of their residence property.

Also, during the course of such dispute Trotter proceeded to cut the limbs off of some trees which were overhanging the easement but which trees were actually located upon the Ogle residence property.

As a result of the dispute this suit was filed on March 3, 1967. An accurate summary of the pleadings filed in the case and steps taken therein prior to trial is set forth in the brief filed on behalf of Trotter and we quote therefrom as follows:

"The Complainant filed a bill in the Chancery Court for Sevier County, Tennessee, against the Defendant, Ernest M. Trotter, alleging that Complainant was the owner of Lot No. 3 in the M. P. Thomas Addition together with a ten (10) foot easement from Lot No. 3 to Prince Street, said easement being over the property of the Defendant; that the Defendant was threatening to enclose the easement with a fence and was interfering with Complainant's blacktopping of the easement. Complainant prayed for an injunction restraining the Defendant from fencing or blocking the easement and from interfering with Complainant's blacktopping of the same. An interlocutory injunction as prayed for was issued upon the fiat of the Honorable Ray L. Reagan, County Judge. On March 25, 1967, Defendant filed an answer and cross-bill admitting Complainant owned Lot No. 3 of the M. P. Thomas Addition and had a ten (10) foot easement over the property of the Defendant from Lot No. 3 to Prince Street. The Defendant denied he was threatening to enclose the easement with a fence but that he intended to build a fence along the eastern edge of his property line between the property of the Defendant and other properties owned by the Complainant but denied he threatened to build a fence between his property and Lot No. 3. Defendant admitted that Complainant had a right to blacktop the easement and use it for the benefit of Lot No. 3 in the M. P. Thomas Addition but denied that Complainant had a right to use the easement for access to property of Complainants other than Lot No. 3. The Defendant assumed the attitude of Cross-Complainant in a cross-bill alleging that in 1955 Cross-Complainant purchased property in Sevierville from A. J. King and wife; that at that time A. J. King and wife, were the owners of Lot No. 3 in the M. P. Thomas Addition and reserved the ten (10) foot easement over Cross-Complainant's property for the benefit of Lot No. 3; that through

mesne conveyances in 1961 the Cross-Defendant acquired title to Lot No. 3 and the ten (10) foot easement; that in 1957 the Cross-Defendant acquired title to a lot fronting on Prince Street adjacent to Cross-Complainant's property from Sevier County Bank and said ten (10) foot right of way was not reserved for the benefit of the property acquired by the Cross-Defendant from Sevier County Bank; that Cross-Defendant was not using the ten (10) foot easement for the benefit of Lot No. 3 in the M. P. Thomas Addition but through protection of the injunction was using it for the benefit of Sevier County Bank property; that Cross-Defendant had no right to use the easement for the benefit of the property acquired by the Cross-Defendant from the Sevier County Bank. The cross-bill prayed for an injunction to prohibit the Cross-Defendant from using the ten (10) foot easement for the benefit of the property acquired by the Cross-Defendant from the Sevier County Bank and to prohibit the Cross-Defendant from interfering with Cross-Complainant's right to build a fence between Cross-Complainant's property and the property acquired by the Cross-Defendant from the Sevier County Bank. On April 4, 1967, the Cross-Defendant filed an answer to the cross-bill admitting that Cross-Defendant purchased property from the Sevier County Bank which was adjacent to the ten (10) foot easement reserved in the deed from A. J. King and wife, to the Cross-Complainant but denying Cross-Complainant had the right to construct a fence along the eastern edge of said ten (10) foot easement. Cross-Defendant further pled that he moved some houses on Lot No. 3 in the M. P. Thomas Addition so as to incorporate approximately seventy one (71) feet of Lot No. 3 in the M. P. Thomas Addition with the property acquired by the Cross-Defendant from the Sevier County Bank and since that time the seventy one (71) feet of Lot No. 3 and the property acquired by the Cross-Defendant from the Sevier County Bank had been used by Cross-Defendant as one piece of property and that the Cross-Defendant has used the ten (10) foot easement for the benefit of said seventy one (71) foot portion of Lot No. 3 and for the benefit of the property acquired by the Cross-Defendant from the Sevier County Bank; that the ten (10) foot easement was purchased by the Cross-Defendant for the use and benefit of any property owned by the Cross-Defendant; that the burden of the easement reserved for the benefit of Lot No. 3 in the M. P. Thomas Addition has not been increased because it is used less for the benefit of Lot No. 3."

The case was tried upon oral testimony and documentary evidence on the 31st day of January, 1972, as a result of which trial a decree was entered ordering, adjudging and decreeing as follows:

"1. That insofar as the original bill and the amended supplemental bills of the Complainants seek an injunction to prohibit and restrain the Defendant from fencing the easement described in Section I of the original bill and from blocking the easement described in Section I of the original bill with vehicles or any other obstruction and from cutting any limbs off of trees overhanging said easement without the permission of this Court, said original bill and amended and supplemental bills are sustained.

2. That insofar as the cross-bill of the Cross-Complainant seeks to enjoin the original Complainants and Cross-Defendants from using the easement described in the original bill, for the benefit of the property acquired by the Cross-Defendant, W. Henry Ogle, from the Sevier County Bank, such cross-bill is sustained except that the Cross-Defendant shall be allowed to propel vehicles from the property acquired from Sevier County Bank onto the property acquired by the Cross-Defendants from Paul Clevenger and wife, and thence from the property acquired by the Cross-Defendants from Paul Clevenger and wife, onto said ten

foot easement or right of way and from said right of way to Prince Street and from Prince Street over said right of way to the property acquired by Complainants from Paul Clevenger thence to property acquired by Complainants from Sevier County Bank, insofar as the cross-bill seeks to enjoin the Cross-Defendant from interfering with the Cross-Complainants right to build a fence along the easterly edge of said right of way, is not sustained.

3. The original Complainants and Cross-Defendants, W. Henry Ogle and wife, Bonnie H. Ogle are ordered to place a permanent obstruction or barrier, within ninety (90) days from the entry of this Order, across their driveway so that persons who have no knowledge or notice of the injunctions herein granted will not drive directly from said easement onto the property of the Complainants and Cross-Defendants acquired by them from the Sevier County Bank.

4. The original Defendant, Ernest M. Trotter, is enjoined from building a fence along the easterly boundary line of the easement or right of way described in the original bill and is enjoined from blocking said easement or right of way in any manner and is enjoined from cutting trees overhanging said easement or right of way without expressed permission of this Court.

5. The original Complainants and Cross-Defendants are enjoined from entering or leaving the right of way described in the original bill directly from the property acquired by the Complainants from the Sevier County Bank and are enjoined from in any way blocking said easement or right of way.

6. All other relief sought by either of the parties is denied." (Tech.Rec. pp. 60–62)

From the foregoing decree, the complainants and defendant have appealed and filed assignments of error.

## ASSIGNMENTS OF ERROR FILED BY TROTTER

Trotter has filed six assignments of error, and in the first assignment he insists that the Chancellor erred in enjoining him from building a fence along the eastern boundary line of the ten foot easement described in the original bill.

In his oral memorandum opinion, the Chancellor said:

"Now, in regard to the fence, it is difficult for the Court to see how it would be proper for the Court to allow a fence to be built along this property line for the simple reason that that is no place to put it. It either has to go on the easement itself, thereby diminishing the width of the easement from ten feet to nine feet or thereabouts or some portion of ten feet or it has to go on Mr. Ogle's property. It appears to the Court that it would be a nuisance to all concerned and an expense to Mr. Trotter and we can avoid the necessity for that type of constant irritation as to both parties by merely requiring that Mr. Ogle put a chain across his drive way so that *a* third person*s* who have no knowledge or notice of the injunction wont drive into it—come down the right-of-way of Mr. Trotter's property and then turn into Mr. Ogle's property." (Tech.Rec. p. 65)

In support of this assignment, counsel cite Long v. Garrison (1925), 1 Tenn.App. 211, and Frumin v. May (1952), 36 Tenn. App. 32, 251 S.W.2d 314.

In Frumin v. May, supra, this Court said that the owner of the fee may fence the easement and provide gates and termini unless forbidden by grant and citing Long v. Garrison, supra, wherein this Court quoted with approval from 17 Am.Jur. at page 211, as follows:

"In the absence of an express provision for an open way in a grant or gift of a private right-of-way, the owner of a fee may show the termini thereof by gates, which the grantee must open and close when he uses the way."

In Long v. Garrison, supra, upon which this Court relied in Frumin v. May, supra, as authority for the proposition that the owner of the fee may fence the easement, the evidence showed that the easement in question was located within a field that was used for pasture and cultivation and the Court quoted from Luster v. Garner (1913), 128 Tenn. 160, 159 S.W. 604, as follows:

"The owner of a servient estate can establish and maintain suitable gates at the termini of an easement of way acquired by an adjoining owner of farming lands by prescription; the prescriptive period maturing while the lands were unenclosed woodlands, during which no gates or bars were maintained." (Supra, 1 Tenn.App. 217)

The Court went on further to say that this rule was applicable to the facts of the case under consideration and the fact that the land involved was used for pasture and cultivation would make it all the more applicable.

Also in Long vs. Garrison, supra, the Court quoted with approval from the Wisconsin case of Dyer v. Walker, 99 Wis. 404, 75 N.W. 79, as follows:

" 'The owner of a right-of-way across the land of another, whether it was acquired by grant or by prescription, is entitled only to a reasonable and usual enjoyment thereof, in view of all the circumstances of the case and of the use then and theretofore made of the premises affected by it, and the owner of the soil is entitled to all the rights and benefits of ownership consistent with the easement. The owner of the land which is subject to a right-of-way may maintain a gate across such way, *if necessary*, to use and enjoyment of his land and does not unreasonably interfere with the use of the way.' " (emphasis supplied)

(1 Tenn.App., supra, p. 217)

Thus, it appears that the right of an owner of the fee to fence an easement or erect gates at the termini thereof is, to a large extent, dictated by practical need to erect such a fence or install gates and the reasonableness of such action in light of the use which is made of the property traversed by the easement.

In the instant case, the Trotter property is being used as a service station and there appears to be no practical need for erection of a fence along the eastern edge of said easement except for the purpose of keeping persons from using said easement as a direct means of ingress to and egress from the Ogle property and the Chancellor has solved this problem by directing the Ogles to place a barrier across their driveway which abuts the eastern side of such easement.

We fully agree with the Chancellor's reasoning and conclusion on this issue, therefore, the first assignment is respectfully overruled.

The second assignment of error is to the effect that the Chancellor erred in enjoining the defendant from blocking the ten-foot easement described in the original bill.

In support of this assignment, counsel argues that Trotter does not insist that he is entitled to block the easement so as to prevent same from being used as means of ingress to and egress from the Ogle rental property, but insists that the Ogles cannot use it as means of ingress to and egress from their residence property.

Since this same question is raised in the fourth assignment, we will consider those two assignments at the same time.

In the third assignment, it is insisted that the Chancellor erred in enjoining the defendant from cutting limbs from trees overhanging the ten-foot easement without express permission of the Chancery Court.

In his memorandum opinion the Chancellor said:

"As to any question, and it has been mentioned briefly, I believe it is in the pleadings about anybody cutting any

trees, there will be no interference by either party with the other's use of the right-of-way as set out under this Court order. If it is necessary for the cutting of any trees to be done, if counsel for the parties cannot agree by stipulation and agreed order to allow it to be done, then you will just have to come back in court to have it done. Certainly, if the trees were to grow in such manner as to impede or block the right-of-way either party would ordinarily be allowed to cut them. In a situation like this where we have had trouble before, the Court is going to take it over and see to it that the trouble between these parties is ended. If you can't agree on the cutting of any trees then you will just have to come back to Court and let the Court decide what's to be done." (Tech.Rec. p. 65)

■■■ We recognize the fundamental *right of a landowner to cut off limbs* which overhang his property from trees on adjoining property, as was held in Granberry v. Jones, et al. (1959), 188 Tenn. 51, 216 S.W.2d 721, but there is no reason why a Court of Equity cannot retain reasonable supervision over the exercise of this right, especially in a case of this kind where some animosity appears to exist between the parties.

Therefore, the third assignment is respectfully overruled.

In his fourth assignment Trotter insists that the Chancellor erred in allowing the Ogles to propel vehicles from their residence property onto their rental property and thence onto the easement to Prince Street and to return from Prince Street to their residence property by the same route.

The case cited by counsel in support of this assignment is Adams, et ux. v. Winnett (1941), 25 Tenn.App. 276, 156 S.W.2d 353. In that case the owner of the easement owned a strip of land six feet wide and fifty-seven feet long adjoining a lot upon which a theater and a post office building were located.

The owner of the easement was seeking to use the same as a rear entrance to the post office and theater but this Court held that such could not be done and said:

" 'The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden.' 17 Am.Jur. 996, sec. 98.

'A fundamental principle is that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts, to which the right is not attached. In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication.' 9 R.C.L. 786, sec. 43; Jones on Easements, secs. 99 and 100.

'A principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of *it upon the servient estate, nor impose a new and additional burden thereon.*' " (Supra, pp. 281, 282, 156 S.W.2d p. 357)

■■■ *It is to be noted that the reason* for the rule announced in that case is that the owner of such easement cannot materially increase the burden of it upon the servient estate or impose *a new or additional*

burden thereon, but the reason for such rule does not exist in the instant case and therefore the rule is not applicable to it.

The evidence conclusively shows that, instead of increasing the burden imposed upon said easement, the Ogles have materially decreased such burden, therefore, we hold that, so long as the Ogles own Lot No. 3 in the M. P. Thomas Addition, they may continue to use the easement in the manner authorized by the trial Court provided such use thereof does not impose any burden upon said easement which is greater than that originally imposed upon it by the purpose for which it was created, to-wit, as a means of ingress to and egress from Lot 3 of the M. P. Thomas Addition.

The trial Court's decree in this respect finds support in the following quotation from C.J.S. as follows:

"An easement can be used only in connection with the estate to which it is appurtenant and cannot be extended by the owner to any other property which he may then own or afterward acquire, unless so provided in the instrument by which the easement is created; and the fact that such property is within the same inclosure as the lot to which the easement is appurtenant makes no difference in the application of the rule. Accordingly, a right of way cannot be used by the owner of the dominant tenement to pass to other land or premises adjacent to or beyond that to which the easement is appurtenant, and so cannot be extended by him to accommodate land which he did not own at the time the right of way was acquired or which is owned by third persons, or to accommodate persons doing business on other lots than the ones to which the easement is appurtenant. *However, it has been held that, where the additional burden is relatively trifling, the user will not be enjoined*; and that, where the owner of a right of way appurtenant to a certain tract uses it for the period of prescription as appurtenant also to another tract, he gains a prescriptive right to such enlarged use." (emphasis supplied) (28 C.J.S. Easements § 92, pp. *772, 773.*)

The fourth assignment of error is respectfully overruled and this also disposes the question raised in the second assignment, which is likewise overruled.

Trotter's fifth assignment is to the effect that the Chancellor erred in allowing the complainant, W. Henry Ogle, to testify, over objection, that he was afflicted with a physical disability. Although the Chancellor took this into consideration, we do not consider it as having any determinative effect, certainly not upon our conclusions, and therefore, it was harmless error and the fifth assignment is respectfully overruled.

Trotter's sixth assignment is to the effect that the trial Court erred in taxing him with the costs of filing of the cross-bill filed by him.

The trial Court is vested with much discretion in the taxation of costs and that discretion will not be disturbed in the absence of showing abuse thereof. T. C.A. § 21–1302; American Bank and Trust Co. v. Lebanon Bank and Trust Co. (1945), 28 Tenn.App. 618, 192 S.W.2d 245; Arrants v. Sweetwater Bank and Trust Co. (1965), 55 Tenn.App. 631, 404 S.W.2d 253.

There being no showing of abuse of discretion, the sixth assignment of error is respectfully overruled.

## ASSIGNMENT OF ERROR FILED BY THE OGLES

The Ogles have filed a single assignment in which they insist that the Chancellor erred in enjoining them from going directly from their residence property onto the easement and in ordering them to place a permanent obstruction or barrier across

their driveway to the property which abuts on the easement.

■ To allow the Ogles to enter their residence property directly from the easement or to leave such property by going directly onto the easement would result in converting said easement from its status as an appurtenance to one parcel of land into another status as an appurtenance to a different parcel of land and this cannot be done without consent of the owner of the servient estate.

■ Despite the fact that Mr. and Mrs. Ogle own one parcel as tenants by the entireties and Mr. Ogle owns the other parcel individually, they are two separate and distinct parcels of land and their separate identities must be preserved insofar as the easement is concerned.

The Ogle's theory that an additional easement has been created by estoppel so as to allow them to enter upon it directly from their residence property and to enter their residence property directly from it is not sustained by the proof.

The only witnesses who testified were Mr. Ogle and Mr. Trotter. While Ogle testified that Trotter acquiesced in use of the easement as an appurtenance to the residence property for some time, this is denied by Trotter and there is no evidence on this issue except the testimony of these two parties.

■ Where a case is tried before a trial Judge upon oral testimony of the witnesses examined in open Court, the finding of the trial Court is entitled to great weight on appeal. Clardy v. Clardy (1939), 23 Tenn.App. 608, 136 S.W.2d 526; Roberts v. Ray (1958), 45 Tenn.App. 280, 322 S.W.2d 435.

■ The evidence does not preponderate against the Chancellor's conclusion on this issue.

There is no evidence of adverse user of the easement by the Ogles in such a manner and for a period of time which would create a prescriptive right to use it as direct means of ingress to and egress from their residence property.

All of the assignments of error having been considered and overruled, the decree of the Chancellor is affirmed and the case remanded to the trial Court for enforcement of such decree and for such other proceedings, consistent with this opinion, as may be necessary and proper.

The costs of this appeal will be borne equally by the parties, that is, Trotter will pay one-half of such costs and the Ogles will pay the remaining one-half thereof.

SHRIVER, P. J., concurs.

TODD, J., concurs in part and dissents in part.

TODD, Judge (concurring in part and dissenting in part).

The principal issue was correctly decided by the Chancellor. That is, the Ogles have no right to enter the easement from their residence property to which the easement is not appurtenant, but must enter the easement from Lot 3 to which the easement is appurtenant. With this portion of the majority opinion, I concur subject only to emphasis upon the "relatively trifling" burden to be imposed and the right of the owner of the subservient to resist if the burden should become more than "relatively trifling."

As to the remainder of the majority opinion, I must respectfully dissent.

The first Trotter assignment of error should be sustained. The law is clear that the owner of property has the right to fence it along its borders. 36A C.J.S.

Fences §§ 2, 5, pp. 260, 263; 35 Am.Jur.2d, Fences, § 2, p. 407.

The owner of the subservient estate has the right to erect fences along the sides of an easement, so long as there is no obstruction of the way. 28 C.J.S. Easements § 98, pp. 780, 781; 25 Am.Jur.2d, Easements and Licenses, §§ 69, 70, 89, pp. 476, 477, 495, 496.

The mere fact that the thickness of a fence (whether a fraction of an inch or several inches) may technically encroach upon the location of the easement is inadequate grounds for denying a fundamental property right to the owner of the fee. To enforce such a doctrine might effectively deprive the owner of the subservient estate of all the usefulness thereof except that of free passage—equal only to an easement. By the same reasoning, one who grants an easement along the edge of his property could be required to remove a fence bordering his property because its thickness encroached upon and obstructed the easement. Such a tedious and technical doctrine should not be established or followed.

Of course, the holder of the easement has the right to a full and unobstructed width of passage; so that, if a fence exists or is constructed on one or both sides of the easement, there must remain the full required width of free passage.

If, as in the present case, the owner of the subservient estate should exercise his privilege of fencing his property, the full 10 feet of clear passage must remain available along the fence. The practical result of building a fence would be a trivial lateral movement of the location of the easement, which is permissible. Terry v. Boston, 246 Ky. 222, 54 S.W.2d 909, 28 C.J.S. Easements § 84, p. 763, note 19.

The first Trotter assignment of error should be sustained and the decree of the Chancellor should be modified accordingly.

The third Trotter assignment should be sustained.

In Granberry v. Jones, 188 Tenn. 51, 216 S.W.2d 721 (1948), the Supreme Court dismissed a suit to abate overhanging vegetation on the ground that the right and power to abate the intrusion was inherent in the owner of the property invaded and he needed no assistance from the courts to do so. The Supreme Court said:

"There can be no question but that this appellee had the legal right to cut any branches or foliage which to any extent hung over his soil from the hedge growing upon the adjoining land.

.  .  .  .  .  .

"It is stated by the text in 1 American Jurisprudence, 539, that 'it has been held that no landowner has a cause of action from the mere fact that the branches of an innoxious tree, belonging to an adjoining landowner, overhang his premises, his right to cut off the overhanging branches being a sufficient remedy.' This seems to be the common law rule. (citing cases) . . .

" 'His remedy is in his own hands. The common sense of the common law has recognized that it is wiser to leave the individual to protect himself . . .' " 188 Tenn. 55, 216 S.W.2d 722.

Despite the commendable motive to monitor the ethics of the relations between these parties, the law simply does not authorize such close judicial supervision of the exercise of a property right which is absolute.

The third Trotter assignment should be sustained and the Chancellor's decree should be modified accordingly.

This dissent would not be complete without an urgent appeal to both parties to allow their nobler instincts to prevail and to arrive at an amicable settlement of this "neighbors quarrel."