IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2010 Session

## PAUL RAWDON ET AL. V. JIMMIE LEE JOHNSTON ET AL.

**Appeal from the Chancery Court for Lewis County**
**No. 5384    Jeffrey S. Bivins, Judge**

**No. M2010-01097-COA-R3-CV - Filed November 23, 2010**

The owner of a water easement from a spring seeks to use the water on land he owns which is adjacent to, but not part of, the original dominant estate. This use would not increase the burden of the easement. The owner of the spring objects. The trial court held for the spring owner. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Michael Everett Spitzer and Katerina Vatulina Moore, Hohenwald, Tennessee, for the appellants, Paul Rawdon and Tresa Rawdon.

Douglas Thompson Bates, Centerville, Tennessee, for the appellees, Jimmie Lee Johnston, Faye Johnston, Jimmy Douglas Johnston, and Andrea Faye Morrow.

**OPINION**

This is a case about the right to use water from a spring. It involves several tracts of land.

BACKGROUND

The One-Acre Lot

In August 1980, Larry Rawdon, the brother of Plaintiff Paul Rawdon, purchased one acre of land from his friend J. B. Johnston and his wife, Willie Jean Johnston. The Johnstons had a spring on their property and also conveyed "the perpetual right to obtain water from

the spring located approximately 1400 feet south of the above-described lot. Purchaser agrees to pay one-half (½) the costs of maintaining the existing pipe used to transport water from the spring across the bargainors property." Larry Rawdon built a house on the property. In April 1988, Larry Rawdon sold this one-acre lot to Van Christopher Poole and his wife, Cynthia Leigh Poole, including the perpetual right to the spring and the provision regarding maintenance. The Pooles used the water for their home and a commercial store located on the property. A portion of the one-acre lot was later taken by the State of Tennessee. The Pooles sold the remainder of the one-acre lot, including the right to the spring and the maintenance provision, to Paul Rawdon in July 2007, along with the seven-acre lot immediately to the west of the one-acre lot.

### The Two-Acre Lot

In 1983, George Mayfield and his wife sold a two-acre lot to Donnie and Debra Haywood. This lot abutted the southwestern boundary of a seven-acre tract Mayfield retained. The Mayfields' seven-acre tract's eastern border abutted the one-acre tract's western border.[1] The Haywoods sold the two-acre lot to Larry and Sonya Rawdon and Frank Walker in 1985 with the same easement running through the Mayfields' land. In turn, they sold the lot to Paul and Tresa Rawdon in 1991, again with the Mayfield easement.

### The Seven-Acre Lot

George Mayfield sold the seven-acre lot immediately to the west of the Pooles' one-acre lot to the Pooles in January 1992. The deed noted that "[t]he property is further subject to the right of Larry Rawdon[2] or his heirs or assigns to run a buried water line across the property as described in the deed from Mayfield to Donnie and Debra Haywood . . . ." A portion of this lot was taken by the State of Tennessee. The Pooles sold the remainder of the seven-acre lot to Paul Rawdon in July 2007. The deed contained the same reservation for a buried water line.

---

[1]In the deed, the Mayfields conveyed to the Haywoods the following:

the right to run a buried water line through [Mayfield's] remaining adjacent property. Said line shall be located around the base of the hill east and south of the property herein conveyed and shall run to a spring in a hollow on land owned by J. B. Johnston. However, [Mayfield] does not own or herein convey any easement or right to use Johnston's spring.

[2]By this time, the two-acre property had been sold to Paul Rawdon.

Thus, as of July 6, 2007, Paul Rawdon owned all three lots.[3]

## The Genesis of the Lawsuit and the Proceedings Below

Paul Rawdon built a home on the two-acre lot. When he built the home, he drilled a well which supplied the home with water. After the State did some blasting for the nearby road project, the well went dry. Rawdon acquired the one-acre and seven-acre lots to access the water available to the one-acre lot from the spring on the Johnston land. Rawdon intended to run a pipe from the water tank on the one-acre lot which received the water from the Johnston spring. The spring supplied water not only to the one-acre lot Rawdon acquired but also to a one-acre lot owned by G. Y. Bennett. Bennett altered the water supply pipes and established a tank on his property. He then cut off the water to Rawdon, precipitating this lawsuit. The disagreement with Bennett was settled, but an issue remained with Jimmy Douglas Johnston, the current owner of the J. B. Johnston land containing the spring, concerning whether Rawdon has the right to take the water from the one-acre lot over the seven-acre lot to the two-acre lot. The trial court ruled in favor of Johnston. Rawdon appealed.

## STANDARD OF REVIEW

The interpretation of a deed is a question of law and is, therefore, reviewed de novo with no presumption of correctness. *Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 274 (Tenn. 2005). The trial court's findings of fact are accorded a presumption of correctness, unless the preponderance of the evidence shows otherwise. Tenn. R. Civ. P. 13(d).

## ANALYSIS

Johnston's position is quite straightforward: the grant of water rights to the one-acre lot is an easement appurtenant, which runs with the land. It was created solely for the benefit of that one-acre lot. Thus, he argues, the easement's use by additional lots is an increased burden which the law prohibits.

When construing a deed, the court seeks to discover the intention of the grantor from the language used and the surrounding circumstances. *Griffis,* 164 S.W.3d at 274. The deed from the Johnstons to Larry Rawdon states:

There is also conveyed to the purchaser, his heirs and assigns, the perpetual

---

[3]According to Exhibit 4, the three lots are now combined into one on the county tax map.

right to obtain water from the spring located approximately 1400 feet south of the above-described lot. Purchaser agrees to pay one-half (½) the costs of maintaining the existing pipe used to transport water from the spring across the bargainors['] property.

This language clearly evinces an intent that the water rights shall go with ownership of the land. "Easements appurtenant . . . involve two tracts of land, and the dominant tenement benefits from the use of the servient tenement. Easements appurtenant run with the land and may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement." *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008) (citations omitted).

The easement is broadly worded. There is no time limit. It is expressly perpetual. There is no explicit limit on the amount of water that may be obtained from the spring, but the second sentence of the provision limits the easement to the existing pipe, which operates as a practical limit on the quantity of water removable from the spring due to the capacity of the pipe. *See Boggs v. Eaton*, 379 So. 2d 520, 523 (Miss. 1980) (a clause in the deed limited the grantee's water rights to the size of the existing pipe and the number of pipes running from a well so as not to deplete the water or reduce water pressure).

The deed provision does not expressly state that the water easement is for the benefit of the one-acre tract alone. Yet, it can be argued that the intent of the grantor was just that. The J. B. Johnston-to-Larry Rawdon deed only transfers the one lot. It does not mention any others.[4] On the other hand, Johnston retained no interest in the water — once it entered the pipe, the water belonged to Rawdon without express restriction.[5]

The owner of an easement may not materially increase the burden on the servient estate. *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983). Johnston maintains that extending the easement to benefit another tract is an increase in the burden. He relies upon *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991), which states: "Enlarging an easement to include adjoining tracts does increase the burden." *MaCammon*, in turn, relies upon *Adams v. Winnett*, 156 S.W.2d 353 (Tenn. Ct. App. 1941), which states:

---

[4]Some cases appear to infer domestic use for water from the circumstances. In *Vohl v. Ray*, No. 01-A-019103CH00116, 1992 WL 117054, at *1 (Tenn. Ct. App. June 3, 1992), the grantor sold sixty-six acres of her land, retaining three acres and water rights to a spring. The appellate court stated that the easement's purpose "was to provide water rights for the three-acre tract," for domestic uses. *Id*. at *4.

[5]Indeed, there is testimony that the Pooles used the water from the spring not only for their home, but to support a commercial store.

-4-

A fundamental principle is that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts, to which the right is not attached. In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication.

*Id.* at 357.

The reason for the rule preventing an easement for the benefit of a particular piece of land from being extended to other tracts of land "is to prevent an increase of the burden upon the servient estate." *Id.* Where the reason does not exist, the rule does not apply. *Ogle v. Trotter*, 495 S.W.2d 558, 566 (Tenn. Ct. App. 1973). Thus, this court has held that, where the burden on the easement is materially decreased or remains no greater than was originally imposed, no injunction will lie to prohibit use of the easement for an adjoining property. *Id.* Similarly, "where the additional burden is relatively trifling, the user will not be enjoined." *O'Leary v. Hall*, No. 03A01-9507-CH-00235, 1996 WL 84852, at *4 (Tenn. Ct. App. Feb. 27, 1996) (quoting *Ogle*, 495 S.W.2d at 566 (quoting 28 C.J.S. *Easements* § 92 (1941))); *see also Carbone v. Vigliotti,* 610 A.2d 565, 569 (Conn. 1992) ("When no significant change has occurred in the use of the easement from that contemplated when it was created, as in this case, the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement."); *Brown v. Voss,* 715 P.2d 514, 518 (Wash. 1986) (where there was no evidence of any increase in burden on the servient estate, the trial court did not abuse its discretion in denying a request to enjoin the owner of the dominant estate from using the easement to benefit a contiguous nondominant estate owned by the same owner); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.11 reporter note (2000).

The trial court found that, "Based upon the evidence in the record, absent what this Court finds to be binding precedent in *Adams*, this Court would not find any increase in the burden." But, as we have seen, the rule in *Adams* has been tempered by the later Tennessee Court of Appeals cases of *Ogle* and *O'Leary*. The evidence does not preponderate against the trial court's finding of no increased burden. We hold that where, as here, the addition of land to the dominant estate, or the extension of the easement to adjacent land owned by the owner of the dominant estate, does not increase the burden on the servient estate, an injunction to prohibit use of the water obtained by the easement on land not originally part of the dominant estate is not appropriate.

The trial court is reversed. Costs of appeal are assessed against the appellees, for which execution may issue.

_____
ANDY D. BENNETT, JUDGE